May it please the Court, I'm Roberta Pantillo and I represent Plaintiff Appellant's estate of Aaron Siler as well as his minor daughter. This case arises from the fatal police shooting of Aaron Siler who was on the opposite side of an SUV 10 to 12 feet away from officer Pablo Torres when he was shot six times in his shoulder and chest. The plaintiffs in this case brought claims against officer Pablo Torres based on excessive force and a section 1983 violation of his constitutional rights as well as Monell claims against the City of Kenosha. The District Court found that a material issue of a genuine issue of material fact existed with respect to the use of excessive force but it jumped to the granted a motion for summary judgment that was brought by defendants. Prior to the motion for summary judgment and early in the proceedings shortly after the complaint was filed the defendants had also moved to bifurcate the trial to bifurcate the claims against police officer Torres as well as those against the City of Kenosha. So that also is an issue in this appeal. Let's go back to your first issue. Yes. The cases that you point to for the qualified immunity issue appear to involve the use of force against a person who is standing still or fleeing but presents no danger. That wasn't the situation here where there may have been reason to believe that he presented a danger and from a close vantage point he took a step away from the exit and towards Torres. What do you think is the one case that you consider most analogous and which facts in that case render it close enough to this one to defeat the defense of qualified immunity? Well Judge with all due respect I don't believe that this court can get to the question of qualified immunity because the district court found that there was a genuine issue of material fact. Actually that's a mischaracterization of the court's ruling. The judge did not make that determination. The judge said that a reasonable jury could find that this use of force was excessive and unreasonable as a matter of Fourth Amendment law. That's a legal conclusion. That's not a conclusion that there are material disputes of fact here. The facts are really not in dispute. What's in dispute is whether they constitute unreasonable force. We wouldn't have jurisdiction if the court said there was a dispute of material fact. This case would have to be dismissed for lack of jurisdiction. Well what I believe what I believe is the Court of Appeals should not be looking at the facts that are in dispute because there clearly are if the trial court decided that a genuine issue of material fact and I say that because what they found what the court specifically found is that a reasonable jury could find that it was unreasonable for officers. That's a legal determination. That's not a judgment that there are material facts in dispute evidentiary disputes. There is no evidentiary dispute here. It's clear what happened and the question is whether what use of force that's a legal judgment. The judge said a reasonable jury could answer that question yes that it was unreasonable and so the first question for us is is that one the case was ultimately decided on qualified immunity grounds. Right. That's that's the second question. Well it was but but but here's the thing I don't believe that the the district court specifically discussed the different factors that it considered and that's part of the legal analysis that's not factual. Well I believe that the court acknowledged that there was an issue of fact. No the judge never said that otherwise we would not have jurisdiction to hear this appeal it would be dismissed outright. Well why don't you go into your most analogous case. I believe that well first of all I believe that the the the Strand case and the Weinman case point just point to the the fact that the fact that this court should not be looking at the facts and making a decision about qualified immunity especially when the district judge analyzed the facts and found that there was a genuine issue. The the facts that would put that would that would qualify. I think you better give up on that point because it isn't helping you. Well on qualified immunity I believe that the Strand case is helpful as well as the Ellis case because you need to look at the sequence and if you're going to take these facts and suggest that there's not a dispute and you're going to look at them in the light most favorable to the plaintiff. Aaron Seiler was shot six times by Officer Torres. The three shots to his shoulder were at a level and Officer Torres testified that he was standing that he was standing when the three shots to the shoulder were fired. Three more were then fired to his chest and those were the fatal shots and according to the medical examiner those shots came at an angle came at a downward trajectory. So Ellis holds that a police officer who is shooting is responsible for all of the shots. He can't he can't fire six shots and when he sees that there's no longer imminent danger if there was any feet away on the opposite side of a large SUV that once he was falling back after being shot in the shoulder he should not have been fatally shot those times in the chest. That's assuming that the shots to the chest came after the shots to the shoulder. I don't believe there's any other interpretation of these facts because Officer Torres said that Aaron Seiler he admits that he fell backward at some point after being shot and I don't know if Officer Torres is at least seven inches shorter than Aaron Seiler. That's a permissible inference but nobody testified to that to the sequence of the shots. No we don't have but if the facts are going to be taken in the light most favorable to plaintiff that inference can certainly be drawn. The the trajectory is important the trajectory angle and those fatal shots coming after Aaron is falling back and certainly no longer a danger if that's what Officer Torres was perceiving would be unconstitutional would be excessive and that's what Ellis stands for. We have other facts that the the district court pointed out in this decision and and also need to be considered and that is the fact that there is an SUV separating Aaron Seiler from Officer Torres. A game of cat-and-mouse had stopped and your client had reached down not once but twice and had moved toward the front of the SUV so the situation had changed and he had been the one to change the situation. We don't know that the cat-and-mouse game had stopped there the SUV is still between them and there is no in fact the evidence is clear that Aaron Seiler never crossed the front of that SUV. He never came farther than the one side of the SUV that he was on. He was shot on the complete opposite side and there's no evidence whatsoever that he ever came around. I think you better stay with the podium we're not going to be able to hear you when we go back over the tapes which we do. I'm sorry about that but so so could the cat-and-mouse game have been continuing? Absolutely. Except now at least from the officer's perspective your client had two opportunities to arm himself and in fact may have armed himself from the officer's perspective. Well from the officer's perspective he never he did not see he did not see Mr. Seiler's hands before shooting him. That's undisputed. I'd like to save some time for rebuttal but I'm also happy to take questions. I've gone through my ten minutes and is that all right? Thank you. Good morning may it please the court I'm Ted Wiskowski the law firm of Stafford Rosenbaum Madison Wisconsin. Good morning. I want to speak to excessive force first because if there was no excessive force then there is no need for qualified immunity and indeed in this case the undisputed facts are that there was no excessive force. At the moment of shooting as you just heard from counsel Seiler was 10 to 12 feet away from from Officer Torres closer than I am to you now. He was less than two seconds away and if he would have been able to get to Torres it could have been very bad. Now the plaintiffs have noted that Torres could not see what Seiler was reaching for on the other side of the vehicle. Is there any dispute of fact that Torres saw Seiler reach downward and that he saw a pipe at Seiler's forearm? There is no dispute about that and it's even corroborated by the independent witness Antonio Jamis in the room who saw who saw Mr. Seiler trying to dislodge the pipe from the hands I have to move aside but business about the hands. It just won't be recorded if you move. I'm sorry it what what Officer Torres clearly could see was the pipe running along the side of Seiler's arm but as I just mentioned Antonio Jamis saw the same thing and that's absolutely not disputed. At the moment of shooting there are other things. I'm not going to go into the details of the shooting. I'm just going to say that the plaintiffs own expert when I said if he can get to Torres and get his gun what's going to happen? Plaintiffs own expert said I asked you may die and plaintiffs expert said if he can get to him and get his gun chances are he's going to die. That's what the plaintiffs own expert said. At the moment of shooting there are other things. Seiler was completely defiant. He was swearing. He was he was responding no to Torres's commands. He was saying shoot me and and and and that repeated. Seiler has a history of violence. Torres knew that. Strangulation and suffocation. During the car chase that proceeded Seiler violated numerous laws, committed a couple of felonies and uncountable Seiler trying to arm himself. They clearly saw it. Everybody agreed. The three people in the room agreed that at the moment before the shooting Seiler made a fast aggressive move to his right. All three of the people in the room agree that immediately before the shooting Seiler was making a move toward Torres. Now a reasonable offer under those circumstances would conclude that he and the civilians that he was there to protect, Jamis and Salinas, were in grave danger. Everyone in the room believed that. Now this is de novo review but there are a couple of things that the court thought prevented summary he was trying to flee and so whether or not he was trying to flee is a question for the jury. Well here's the photograph that's in the record several places. Torres is on this side of the SUV. Excuse me, Torres is on the other side of the SUV. Seiler is on this side. You can see that Seiler has an unobstructed exit if he wants to flee it's there. As they played cat and mouse you can see that Seiler got within a few feet of this place several times. He wasn't trying to flee. Instead he was trying to arm himself and then he came at Torres and that is undisputed evidence. The other thing that the judge said is well it was unclear what exactly what Seiler was going to do. Well we don't need certainty but all three men in the room believed that Seiler was moving on Torres. Everybody believed that. There is no other evidence. So there really is no evidence to prevent a finding that there was no excessive force. Under your case law, under the case law in your circuit, you may affirm on any ground and what we would ask you to do is affirm that there was that this case should give instructions that this case should be dismissed because there was no excessive force as a matter of law. A few more points that were in dispute from the plaintiffs. They claimed that the pipe that was being used as a handle for the jack was not a pipe. If you look in the record it was a pipe that was attached to the jack. It was a steel pipe. He was trying to arm himself, they argue. Well what was he trying to do when he kept reaching down to grab things if he wasn't trying to arm himself? But we don't have to even infer that. Antonio Jameis said that's exactly what he was trying to do and at the moment he did arm himself. The moment of shooting. He was he had something to throw at the officer. Then they say this business about the order of about the shots. Most important point, there are shots received here and here. Those tell us and the experts agree that that means that Siler was on his feet upright at the time of the shot. Upright meaning on his feet. This business about the order of shots, there is no evidence. There's no evidence that which shots came when. There's no evidence of when Torres might have realized that he had shot enough. There's no evidence of if Torres would have realized that somehow, which we don't know, that he'd have to think about it and he'd have to recalibrate. There's case law cited in the briefs about when in a chaotic fast situation like this an officer needs time to recalibrate. But to make any of those points, you need expert testimony. You can't just speculate about these things. Speculating about what happened is not a response that causes a that the seven shots were fired in such rapid succession that it only took a few seconds, is that correct? Approximately one and a half seconds. One and a half seconds to shoot the shots and if I go back while we're on seconds, less than two seconds for Siler to get to Torres and try to disarm him. But yes, everyone agrees that the shots were fired in rapid order just as the officer was trained because the officers are trained to continue to shoot until the threat is eliminated. And our case law doesn't require the officer in this kind of instantaneous situation where split-second decisions are made. The officer isn't constitutionally required to recalibrate. No. That's not what our if there was, there would need to be expert testimony to explain how that could be done in this short period of time. Only if there's time and circumstances that would reasonably give the officer an opportunity to re-evaluate the use of force. So when we're dealing with excessive force, as you know, we're dealing with would. What would a reasonable officer believe? Not is this certain or is this beyond any doubt? Under all of these circumstances, a reasonable officer would believe that Siler was a serious, immediate threat and was making a move toward him. Would an officer believe that with very little doubt? On that basis, the case should be dismissed because there was no have any cases on qualified immunity, close cases. There are none. We all look very hard and the cases are just completely different. Cases where people were shot in the back and so forth. But on qualified immunity, I'll move to that if for some reason there would be a need for a trial on excessive force, there's no question there's qualified immunity here. Under all of the well-known principles that you move to a could standard, could a reasonable officer believe that Siler was an immediate threat? Of course he could. The doctrine is to provide breathing room and it even says, of course, the doctrine protects all but the plainly incompetent or those who on qualified immunity, nor did the judge think it was. The only thing that judge thought was close was whether there's excessive force. And unfortunately there, although this is a review, but it is, I think, instructive to talk about what caused the judge to do what he did. The judge misconstrued a few things. There's no reasonable, there's no excessive force here. If somehow a trial is needed on that because there's certainly no question that qualified immunity applies. And bifurcation, by the way, bifurcation was a good decision by the court. The plaintiffs, as you'll see in the record, filed a massive complaint. I think there was something like a hundred and twenty pages with the attachments, hundreds of allegations, 63 pages of actual allegations. Do we have that, Your Honor? But we briefed that issue. As you know, the 7th you require that the parties take a serious look at jurisdiction and point things out. So we felt obligated to say that. We also were surprised to hear the bifurcation issue come up because it was not discussed at all in front of the district court. They didn't tell the district court they wanted to appeal his bifurcation order too. They just said they wanted to appeal the qualified immunity. But the final judgment here is for Pablo Torres. The city of Kenosha obviously has an interest in what happens here, but the final judgment is for Torres. Therefore, we do not understand and have not found a case. The city of Kenosha, is it even a party to the appeal? It is. Well, the point is that the city of Kenosha is, we list it as a party, it's there, it's not entirely clear how to proceed, but the point is that the only judgment in this case is in favor of Pablo Torres. And under those circumstances, we look for case law to say, well, do you have jurisdiction? And while it doesn't logically make sense to us that you would have jurisdiction over the bifurcation issue, we did not find cases that were absolutely on point that could decide that issue. So our belief, Your Honor, is no, with the qualification I just made. But this was a chaotic, horrible situation with two civilians in grave danger. If Torres hadn't acted and protected them, and if Siler could have gotten to Torres, this situation could have been much, much worse. In these horrible situations happening in split seconds, since Graham, the Supreme Court has said, we're not here to judge, and only with the most extreme hindsight and speculation could anyone conclude that Officer Torres didn't do the right thing. Certainly, if I ever have a problem, I hope he's the one that comes and helps me. And I'm sure that Antonio Jamis and Juan Salinas are grateful, they said they're grateful, for saving them that day. Thank you. Thank you. Just to address a few of the issues raised by, raised by Defendant Ampoli, the, I think the issue becomes pretty clear that there is a And, and these facts that the District Court considered contradict what Defendant Ampoli is even suggesting. The District Court lays out its findings, and along with some of that I mentioned earlier, is the fact that Aaron Siler never threatened Officer Torres. Officer Torres never saw Aaron Siler armed with a weapon. Aaron Siler had not made any movements toward Officer Torres. Those were findings that the District Court... District judges don't make findings on summary judgment. There were no findings. These were the factors, but these were the factors... That's a legal analysis. The judge simply recounts what the evidence is when there's a summary judgment motion and decides as a legal matter whether there's sufficient evidence to go to the jury on the ultimate legal questions. Judges don't make findings on summary judgments. That's very basic. Right, but the issue is that the, the Defendant Ampoli is actually arguing the facts, arguing what these... Right, whether this evidence constitutes excessive force as a matter of law or not. Right, and I don't believe that the, if we see this dispute about these facts, if we see a dispute, I don't believe... There's no dispute about what the evidence is. There is a dispute about whether the evidence constitutes excessive force or a reasonable jury could so conclude. Right, and the, the issue obviously is we believe there is plenty of evidence not only to survive excessive force, but also to survive any issue of qualified immunity. I do want to touch just briefly on the jurisdiction for our bifurcation arguments. I would just point the court to Bastion, the Petron Resources Corp. The appeal of a final judgment brings up for review all prior district court decisions that are adverse to the appellant, and I... That's not a 54B case. This is a 54B partial judgment. It doesn't bring up everything. Okay, and if... There's no jurisdiction to review the bifurcation order. The cases you're citing pertain to a true final judgment that's global, and in that case, interlocutory orders are merged with the final judgment and themselves become final, and then that brings everything up. That's not how a Rule 54B functions. Okay, with respect to bifurcation, though, I believe that if it's, if it's addressed at all, the procedural posture going forward, if bifurcation is, is... If the, if the courts, if the district court's decision remains, and the excessive force claims are just, I'm sorry, the qualified immunity and claims against Officer Torres are in fact dismissed, the bifurcation becomes moot because the claims against the City of Kenosha proceed, but those issues are not bifurcated, and I just... That came up in the briefs, and I want to be sure that that's... You can make that argument to Judge Pepper if we affirm. Yes, the issues obviously are pretty clear, and this is someone's life who was taken in a fatal shooting, and obviously the gravity of that type of constitutional right, the right to live, not be harmed, is significant, and so we do again ask this court to reverse the district court's decision, granting summary judgment to Officer Torres. Thank you. Thanks to both parties, and the case will be taken under advisement.